UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------

LABARRON TATE; BRANDON HOOD; JULIANA
JUAREZ DUFRANE; SCOTT DUFRANE; RYAN
LANCASTER; TARRYN TYLER; and MATTHEW
MAHER, individually and on behalf of all others similarly
situated,

                                            Plaintiffs,

                 v.

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY; DISCOVER BANK;
WELLS FARGO BANK, N.A.; U.S. BANK,
NATIONAL ASSOCIATION; DEUTSCHE
BANK NATIONAL TRUST COMPANY;
DEUTSCHE BANK TRUST COMPANY
AMERICAS; THE BANK OF NEW YORK
MELLON, N.A.; THE BANK OF NEW YORK
MELLON TRUST COMPANY, N.A.; UMB
BANK, N.A.; WILMINGTON TRUST, N.A.;
WILMINGTON TRUST COMPANY, N.A.;
NELNET SERVICING, LLC; NELNET, INC.;
NAVIENT SOLUTIONS, LLC; NAVIENT
CORPORATION; and NAVIENT CREDIT FINANCE
CORPORATION,

                                       Defendants.

--------------------------------------------------------------------------

Case No. _____

**COMPLAINT**

**Jury Demand**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   JURISDICTION AND VENUE ......................................................................... 7

III.  THE PLAINTIFFS ............................................................................................. 7

IV.   THE DEFENDANTS .......................................................................................... 8

      A.  Defendant Pennsylvania Higher Education Assistance Agency .................. 8

      B.  Defendant Discover Bank .......................................................................... 9

      C.  The Wells Fargo Bank Defendant .............................................................. 9

      D.  Defendant U.S. Bank ................................................................................ 10

      E.  The Deutsche Bank Defendants ................................................................ 11

      F.  The Bank of New York Mellon Defendants ............................................... 11

      G.  Defendant UMB Bank .............................................................................. 12

      H.  The Wilmington Trust Defendants ........................................................... 13

      I.  The Nelnet Defendants .............................................................................. 13

      J.  The Navient Defendants ............................................................................ 14

      K.  Student Loan Asset-Backed Securitization Trusts .................................... 15

V.    DEFENDANTS' WRONGFUL COLLECTIONS ON EACH PLAINTIFF'S
      DISCHARGED LOANS .................................................................................. 18

      A.  Plaintiff LaBarron Tate ............................................................................ 18

          Mr. Tate's Discharged PHEAA Loan .................................................... 19

          Mr. Tate's Discharged Nelnet Loan ...................................................... 19

          Mr. Tate's Discharged Sallie Mae-Navient Loan .................................. 19

      B.  Plaintiff Brandon Hood ............................................................................ 20

          Mr. Hood's Discharged Sallie Mae-Navient Loan ................................ 21

      C.  Plaintiff Juliana Juarez DuFrane .............................................................. 21

          Ms. Juarez DuFrane's Discharged Sallie Mae-Navient Loans .............. 22

D.  Plaintiff Scott DuFrane ............................................................................ 23

Mr. DuFrane's Discharged Sallie Mae-Navient Loan ............................. 23

E.  Plaintiff Ryan Lancaster .......................................................................... 24

Mr. Lancaster's Discharged PHEAA-USB Loans ................................... 24

Mr. Lancaster's Discharged Wells Fargo Loans ..................................... 25

F.  Plaintiff Tarryn Tyler ............................................................................... 25

Ms. Tyler's Discharged PHEAA-USB Loans ......................................... 26

Ms. Tyler's Discharged Discover Loan ................................................... 27

G.  Plaintiff Matthew Maher .......................................................................... 27

Mr. Maher's Discharged Sallie Mae-Navient Loans .............................. 27

VI.    DEFENDANTS' VIOLATIONS OF THE FEDERAL RIGHTS ACCORDED TO
BANKRUPTCY-DISCHARGED PRIVATE STUDENT LOAN BORROWERS ......... 29

VII.   THE BANKRUPTCY CODE'S TREATMENT OF PRIVATE STUDENT LOANS .... 30

VIII.  THE MYTH THAT STUDENT LOANS ARE NOT DISCHARGEABLE IN
BANKRUPTCY ................................................................................................... 35

IX.    THE FOUR-YEAR STATUTE OF LIMITATIONS OF 28 U.S.C. § 1658(a) APPLIES
TO PRIVATE STUDENT LOAN DISCHARGE-EXCEPTION CLAIMS UNDER
SECTION 523(a)(8)(B) ...................................................................................... 38

X.     CLASS ACTION ALLEGATIONS ..................................................................... 40

XI.    CLAIMS FOR RELIEF ...................................................................................... 44

COUNT ONE   Declaratory Relief Regarding the Defendants' Wrongful Collections
Against the Class Members ................................................ 44

COUNT TWO  Injunctive Relief to Enforce and Carry Out the Bankruptcy Discharge . 46

COUNT THREE Equitable Relief - Restitution and Disgorgement to Return the
Wrongfully Collected Funds to Class Members ................................ 48

COUNT FOUR  Declaratory and Injunctive Relief Regarding the Applicable Statute of
Limitations ....................................................................... 49

PRAYER FOR RELIEF .................................................................................................... 49

## I.   INTRODUCTION

1.      Plaintiffs LaBarron Tate, Brandon Hood, Juliana Juarez DuFrane, Scott DuFrane, Ryan Lancaster, Tarryn Tyler, and Matthew Maher (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated by and through their undersigned counsel, bring this class action against (a) Pennsylvania Higher Education Assistance Agency; (b) Discover Bank; (c) Wells Fargo Bank, N.A.; (d) U.S. Bank, National Association; (e) Deutsche Bank National Trust Company; (f) Deutsche Bank Trust Company Americas; (g) The Bank of New York Mellon, N.A.; (h) The Bank of New York Mellon Trust Company, N.A.; (i) UMB Bank, N.A.; (j) Wilmington Trust, N.A.; (k) Wilmington Trust Company, N.A.; (l) Nelnet Servicing, LLC; (m) Nelnet, Inc.; (n) Navient Solutions, LLC; (o) Navient Corporation; and (p) Navient Credit Finance Corporation (collectively, "Defendants").

2.      This nationwide class action arises out of the Defendants' wrongful collections on several hundred thousand Private Student Loans – *after these Private Student Loans were discharged in bankruptcy cases* (collectively, "Discharged Loans") filed by Plaintiffs and other Private Student Loan borrowers (collectively, "Class Members").

3.      Class Members' Private Student Loans were discharged pursuant to Sections 727(b) or 1328(a) of the Bankruptcy Code.

4.      A Private Student Loan is an education-related loan that does not constitute a loan or an obligation described in Section 523(a)(8)(A) of the Bankruptcy Code. In other words, a Private Student Loan is any education-related loan or obligation that is neither (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, nor (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend. Private

Student Loans comprise about 8% of the market of education-related loans, while all other education-related loans, often called "government student loans," comprise about 92% of the market.

5.      The aggregate amount of Defendants' wrongful collections on Discharged Loans substantially exceeds $1 billion.

6.      Under the Bankruptcy Code, Defendants' wrongful collections on Discharged Loans are void and without any legally binding effect.

7.      Because Defendants' wrongful collections on the Discharged Loans are void, the funds that the Defendants wrongfully collected are the property of Class Members.

8.      Because those collections are the property of Class Members, the Defendants must return them to Class Members.

9.      The Defendants have wrongfully collected billions of dollars on these Discharged Loans based on the myth that these loans are not discharged in bankruptcy and that no legal action is required for the Defendants to collect on these debts.

10.     The myth ignores the explicit provisions of Section 523(a)(8)(B) of the Bankruptcy Code, which establishes the exacting requirements that a student loan creditor must meet to obtain a court judgment that its loan is not discharged in bankruptcy.

11.     The myth also tramples upon the Class Members' due process rights under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure to be heard on the issue in an adversary proceeding, and to have a court determine the issue—*not the self-interested creditor*— all before the creditor commences any post-discharge collection activity.

12.     The myth also improperly conflates the Bankruptcy Code's treatment of **government** student loans with its treatment of **Private Student Loan**s. But the Bankruptcy Code

treats them very differently. Section 523(a)(8)(A) of the Bankruptcy Code, which addresses **government** student loans, requires the *borrower* to prove that "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." But Section 523(a)(8)(B), which addresses **Private Student Loan**s, requires the *lender* to prove several specific and detailed facts about the loan and the borrower, discussed below, before the lender is legally permitted to collect on the loan.

13. Yet the Defendants actively promote and rely upon the myth that Private Student Loans are not discharged in bankruptcy, and they promote this myth to the public and to Class Members as a crucial part of their business models, plans, and operations.

14. In **Count One** of this Complaint, the Plaintiffs and Class Members seek a judgment declaring that:

(a) The Class Members' Discharged Loans were discharged in their bankruptcy cases pursuant to Bankruptcy Code Section 727(b) (applicable to discharges granted under Chapter 7 of the Bankruptcy Code) or Bankruptcy Code Section 1328(a) (applicable to discharges granted under Chapter 13 of the Bankruptcy Code);

(b) Defendants' collections on the Class Members' Discharged Loans were wrongful, void, and without any binding legal effect;

(c) The funds that Defendants collected on Discharged Loans are the property of the Class Members; and

(d) The funds that Defendants collected on Discharged Loans must be returned to Class Members.

15. The declaratory relief that the Plaintiffs and Class Members seek in Count One is authorized by the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), which states that the

Court, "[i]n a case of actual controversy within its jurisdiction," is authorized to "declare the rights and other legal relations of any interested party."

16.     The declaratory relief that the Plaintiffs and Class Members seek in Count One is also authorized by Section 105(a) of the Bankruptcy Code (11 U.S.C. § 105(a)), which states that the Court is authorized to "issue any order or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."

17.     In **Count Two** of this Complaint, the Plaintiffs and Class Members seek a permanent injunction ordering and directing the Defendants, for each Class Member:

(a) To refrain from, and to cease in perpetuity, all acts to collect or attempt to collect on Discharged Loans;

(b) To adjust their books and records to reflect that each Class Member's Discharged Loans have been discharged in bankruptcy and that each Class Member has no personal liability for any amount on account of his or her Discharged Loans;

(c) To correct their reporting to all credit reporting agencies to cause such credit reporting agencies to adjust their books and records to reflect that each Class Member's Discharged Loans have been discharged and that each Class Member has no personal liability for any amount under his or her Discharged Loans; and

(d) To provide written notice and confirmation to each Class Member (i) that the Class Member has no personal liability for any amount on account of his or her Discharged Loans; (ii) that no further collections or attempts to collect on the Class Member's Discharged Loans will be made; (iii) that Defendants' books and records have been adjusted to reflect that the Class Member's Discharged Loans

4

have been discharged in bankruptcy; and (iv) that this adjustment has been reported to all credit reporting agencies.

18.     The injunctive relief that the Plaintiffs and Class Members seek in Count Two is authorized by the Declaratory Judgment Act (28 U.S.C. § 2202), which states that the Court is authorized to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree."

19.     The injunctive relief that the Plaintiffs and Class Members seek in Count Two is also authorized by Section 105(a) of the Bankruptcy Code, which states that the Court is authorized to "issue any order or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."

20.     In **Count Three**, the Plaintiffs and Class Members seek equitable relief, based upon restitution and disgorgement, requiring the Defendants to return to the Class Members the full amount that the Defendants wrongfully collected on the Class Members' Discharged Loans, plus applicable pre-judgment interest thereon.

21.     The equitable relief that the Plaintiffs and Class Members seek in Count Three is authorized by both the Declaratory Judgment Act (28 U.S.C. § 2202) and by Section 105(a) of the Bankruptcy Code (11 U.S.C. § 105(a)).

22.     In **Count Four**, the Plaintiffs and Class Members seek a declaratory judgment under the Declaratory Judgment Act declaring that upon the expiration of four years after a Class Member's bankruptcy filing, 28 U.S.C. § 1658(a) bars any claim of nondischargeability that any Defendant has against that Class Member, whether under Section 523(a)(8)(B) of the Bankruptcy Code or otherwise.

23.    In Count Four, the Plaintiffs and Class Members also seek an injunction under both the Declaratory Judgment Act and Section 105(a) of the Bankruptcy Code barring the Defendants from filing any legal action asserting a claim of nondischargeability against a Class Member, whether under Section 523(a)(8)(B) of the Bankruptcy Code or otherwise, more than 4 years after that Class Member's bankruptcy filing.

24.    Each of the Plaintiffs is suing in both his or her personal capacity and in his or her class representative capacity on behalf of Class Members.

25.    Each of the following Defendants is sued in its personal capacity: Pennsylvania Higher Education Assistance Agency; Discover Bank; Nelnet Servicing, LLC; Nelnet, Inc.; Navient Solutions, LLC; Navient Corporation; and Navient Credit Finance Corporation.

26.    Each of the following defendants is sued in both its personal capacity and in its capacity as an indenture trustee for the benefit of noteholders in Private Student Loan asset-backed securitization trusts: Wells Fargo Bank, N.A.; U.S. Bank, National Association; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; The Bank of New York Mellon, N.A.; The Bank of New York Mellon Trust Company, N.A.; UMB Bank, N.A.; Wilmington Trust, N.A.; and Wilmington Trust Company, N.A.

27.    All allegations made in this Complaint are based on the investigation of Plaintiffs' counsel, except those allegations pertaining to the individual circumstances of a particular Plaintiff that are based on that Plaintiff's personal knowledge.

28.    Any matters stated herein as unknown to the Plaintiffs or unidentified by the Defendants are nevertheless fully known to the pertinent Defendants.

## II.    JURISDICTION AND VENUE

29.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) because this action is a "civil proceeding[] arising under title 11, or arising in or related to cases under title 11."

30.    This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and there are 100 or more Class Members who are citizens of different states from Defendants.

31.    Because this case is a "civil proceeding[] arising under title 11, or arising in or related to cases under title 11" under 28 U.S.C. § 1334(b), Rule 7004(d) of the Federal Rules of Bankruptcy Procedure governs this Court's personal jurisdiction over the Defendants. Bankruptcy Rule 704(d) states: "NATIONWIDE SERVICE OF PROCESS. The summons and complaint and all other process except a subpoena may be served anywhere in the United States."

32.    This Court also independently has personal jurisdiction over each one of the Defendants based upon (a) their wrongful acts in violation of the Bankruptcy Code taking place in (or through an agent, representative, or contractor in) New York; (b) their wrongful acts in violation of the Bankruptcy Code that have injured Plaintiffs and Class Members located in New York; or (c) any other applicable jurisdictional provision.

33.    Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because a substantial part of the events, transactions, and conduct giving rise to the claims in this case occurred in this judicial district.

## III.    THE PLAINTIFFS

34.    Plaintiff LaBarron Tate is a citizen of, and resides in, the State of Georgia.

35.     Plaintiff Brandon Hood is a citizen of, and resides in, the State of Massachusetts.

36.     Plaintiff Juliana Juarez DuFrane is a citizen of, and resides in, the State of California.

37.     Plaintiff Scott DuFrane is a citizen of, and resides in, the State of California.

38.     Plaintiff Ryan Lancaster, f/k/a Ryan Goodacre, is a citizen of, and resides in, the State of Michigan.

39.     Plaintiff Tarryn Tyler is a citizen of, and resides in, the State of Colorado.

40.     Plaintiff Matthew Maher, a/k/a Sam Maher, is a citizen of, and resides in, the State of New York.

## IV.   THE DEFENDANTS

### A.  Defendant Pennsylvania Higher Education Assistance Agency

41.     Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") is an agency created by the Commonwealth of Pennsylvania, pursuant to a constitutional amendment approved by Pennsylvania voters in 1963, for the authorized purpose of providing scholarship grants and loans to Pennsylvania citizens.

42.     PHEAA's student loan business includes servicing and, from time to time, owning Private Student Loans.

43.     In this business, PHEAA has wrongfully collected and continues to wrongfully collect on Discharged Loans from Private Student Loan borrowers after their Private Student Loans were discharged in bankruptcy.

44.     PHEAA's Private Student Loan borrowers reside in Pennsylvania, New York, and elsewhere.

45.     PHEAA uses the trade name of American Education Services in connection with its Private Student Loan businesses that has wrongfully collected and continues to wrongfully collect on Discharged Loans.

## B.  Defendant Discover Bank

46.     Defendant Discover Bank ("Discover") is a national bank whose business includes owning and servicing Private Student Loans.

47.     In its business of owning and servicing Private Student Loans, Discover has wrongfully collected and continues to collect on Discharged Loans from Private Student Loan borrowers after their Private Student Loans were discharged in bankruptcy.

48.     Discover's Private Student Loan borrowers reside in New York and elsewhere.

49.     Discover uses the trade name of Discover Student Loans in connection with its Private Student Loan business that has wrongfully collected and continues to wrongfully collect on Discharged Loans.

## C.  The Wells Fargo Bank Defendant

50.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association whose business, until approximately 2021, included owning and servicing Private Student Loans, both as an owner of a Private Student Loan portfolio in its personal capacity, as well as an indenture trustee owner for the benefit of noteholders in Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants. In approximately 2021, Wells Fargo sold the Private Student Loan portfolio that it personally owned to a purchaser group associated with the Nelnet Defendants, and stopped collecting on the Private Student Loans in its own portfolio.

51.     However, Wells Fargo has wrongfully collected and continues to wrongfully collect on Discharged Loans in its capacity as an indenture trustee owner for the benefit of noteholders in Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants.

52.     Wells Fargo's Private Student Loan borrowers reside in New York and elsewhere.

53.     Wells Fargo used the trade name of Educational Financial Services in connection with its Private Student Loan business that wrongfully collected on Discharged Loans.

54.     According to public domain information available on the website of Defendant Navient Corporation, Wells Fargo has also served as an indenture trustee for the benefit of noteholders in Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants.

55.     As the indenture trustee of these securitization trusts, Wells Fargo is the owner of the Private Student Loans.

56.     In that capacity as indenture trustee, Wells Fargo has wrongfully collected on Discharged Loans.

**D.  Defendant U.S. Bank**

57.     Defendant U.S. Bank, National Association ("USB") is a national banking association that has served as an indenture trustee for the benefit of noteholders for at least four to six Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Nelnet Defendants.

58.     USB has also served as an indenture trustee for the benefit of noteholders for at least fourteen to fifteen Private Student Loan asset-backed securitization trusts sponsored by one

or more entities associated with National Collegiate Funding, National Collegiate Trust, and First Marblehead Corporation.

59.     As the indenture trustee of these securitization trusts, USB is the owner of the Private Student Loans.

60.     In that capacity as indenture trustee, USB has wrongfully collected and continues to wrongfully collect on Discharged Loans.

61.     USB's Private Student Loan borrowers reside in New York and elsewhere.

### E.  The Deutsche Bank Defendants

62.     Defendant Deutsche Bank National Trust Company and Defendant Deutsche Bank Trust Company Americas (together, "Deutsche Bank") are each a national trust company entity that, according to public domain information available on the website of Defendant Navient Corporation, has served as an indenture trustee for the benefit of noteholders for Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants.

63.     As the indenture trustee of these securitization trusts, Deutsche Bank is the owner of the Private Student Loans.

64.     In that capacity as indenture trustee, Deutsche Bank has wrongfully collected and continues to wrongfully collect on Discharged Loans.

65.     Deutsche Bank's Private Student Loan borrowers reside in New York and elsewhere.

### F.  The Bank of New York Mellon Defendants

66.     Defendant The Bank of New York Mellon, N.A. and Defendant The Bank of New York Mellon Trust Company, N.A. (together, "Bank of New York Mellon") are each a national

trust company entity that, according to public domain information available on the website of Defendant Navient Corporation, has served as an indenture trustee for the benefit of noteholders for Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants.

67.     As the indenture trustee of these securitization trusts, Bank of New York Mellon is the owner of the Private Student Loans.

68.     In that capacity as indenture trustee, Bank of New York Mellon has wrongfully collected and continues to wrongfully collect on Discharged Loans.

69.     Bank of New York Mellon's Private Student Loan borrowers reside in New York and elsewhere.

### G.  Defendant UMB Bank

70.     Defendant UMB Bank, N.A. ("UMB Bank") is a national trust company entity that, according to public domain information available on the website of Defendant Navient Corporation, has served as an indenture trustee for the benefit of noteholders for Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants.

71.     As the indenture trustee of these securitization trusts, UMB Bank is the owner of the Private Student Loans.

72.     In that capacity as indenture trustee, UMB Bank has wrongfully collected and continues to wrongfully collect on Discharged Loans.

73.     UMB Bank's Private Student Loan borrowers reside in New York and elsewhere.

### H.  The Wilmington Trust Defendants

74.     Defendant Wilmington Trust, N.A. and Defendant Wilmington Trust Company, N.A. (together, "Wilmington Trust") are each a national trust company entity that, according to public domain information available on the website of Defendant Navient Corporation, has served as an indenture trustee for the benefit of noteholders for Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with the Navient Defendants.

75.     As the indenture trustee of these securitization trusts, Wilmington Trust is the owner of the Private Student Loans.

76.     In that capacity as indenture trustee, Wilmington Trust has wrongfully collected and continues to wrongfully collect on Discharged Loans.

77.     Wilmington Trust's Private Student Loan borrowers reside in New York and elsewhere.

### I.  The Nelnet Defendants

78.     Defendant Nelnet Servicing, LLC ("Nelnet-Servicer") services and, from time to time, owns Private Student Loans.

79.     Nelnet-Servicer is a wholly owned subsidiary of Defendant Nelnet, Inc. ("Nelnet-Parent", and together with Nelnet Servicer, "Nelnet").

80.     Nelnet, Inc. is a publicly traded corporation.

81.     Nelnet has wrongfully collected and continues to wrongfully collect on Discharged Loans.

82.     In public domain resources, Nelnet-Parent and Nelnet-Servicer have represented that they act together in the servicing of Private Student Loans, including their wrongful collections on Discharged Loans.

83.     During 2021, one or more entities associated with Nelnet sponsored the creation of at least four separate Private Student Loan asset-backed securitization trusts and arranged for USB to be the indenture trustee for the benefit of noteholders of these trusts.

84.     Nelnet's Private Student Loan borrowers reside in New York and elsewhere.

85.     Nelnet Servicing uses the trade name of FirstMark Services in connection with its Private Student Loan business that has wrongfully collected and continues to wrongfully collect on Discharged Loans.

### J.  The Navient Defendants

86.     Defendant Navient Solutions, LLC ("Navient-Servicer") services Private Student Loans.

87.     Navient-Servicer is a wholly owned subsidiary of Navient Corporation ("Navient-Parent" and together with Navient-Servicer, "Navient").

88.     Navient Corporation is a publicly traded corporation.

89.     Navient has wrongfully collected and continues to wrongfully collect on Discharged Loans.

90.     Navient's Private Student Loan borrowers reside in New York and elsewhere.

91.     In public domain resources, Navient-Parent and Navient-Servicer have represented that they act together in the servicing of Private Student Loans, including their wrongful collections on Discharged Loans.

92.     According to Navient's website, one or more entities associated with Navient sponsored the creation of a vast array of Private Student Loan asset-backed securitization trusts.

93.     Navient also arranged for one or more of Defendant Wells Fargo, the Deutsche Bank Defendants, the Bank of New York Mellon Defendants, Defendant UMB Bank, or the

Wilmington Trust Defendants to be an indenture trustee for the benefit of noteholders of these trusts.

94.     For an unknown number of Navient-sponsored Private Student Loan asset-backed securitization trusts, Navient is the successor-in-interest to the original sponsors of the trusts.

95.     The indenture trustees of these trusts are also one or more of Defendant Wells Fargo, the Deutsche Bank Defendants, the Bank of New York Mellon Defendants, Defendant UMB Bank, or the Wilmington Trust Defendants.

96.     Defendant Navient Credit Finance Corporation ("NCFC") is also wholly owned by Navient-Parent.

97.     NCFC owns Private Student Loans, typically in one of two situations. NCFC holds loans for Navient prior to Navient's initial securitization of a batch of Private Student Loans into a securitization trust. And NCFC holds loans that Navient has removed from its securitization trusts as a consequence, for example, of a Private Student Loan borrower filing for bankruptcy or obtaining a bankruptcy discharge.

98.     Navient-Servicer services NCFC's portfolio of Private Student Loans.

99.     NCFC and Navient-Servicer have wrongfully collected and continue to wrongfully collect on Discharged Loans.

100.     NCFC's Private Student Loan borrowers reside in New York and elsewhere.

### K.  Student Loan Asset-Backed Securitization Trusts

101.     As alleged in more detail below, some or all of the loans of Plaintiffs LaBarron Tate, Brandon Hood, Juliana Juarez DuFrane, Scott DuFrane, Ryan Lancaster, Tarryn Tyler, and Matthew Maher, as well as the Class Members' loans, are held in one or more Private Student Loan asset-backed securitizations ("private SLABs").

102.    Like asset-backed securitizations for residential mortgages, credit card receivables, and other forms of consumer debt, a private SLAB is a sophisticated financing and investment transaction. It is sponsored by the owner of a pool of Private Student Loans, which is usually the originator and servicer of the loans. It originates with the acquisition of a pooled group of Private Student Loans by the indenture trustee of a trust for the benefit of the noteholders who financed the acquisition. After it becomes operational, collections of principal and interest payments from the borrowers are distributed to pay administrative fees and investment returns. The following paragraphs allege more detail about the formation of private SLABs, their operation, and the participants in them.

103.    Before the securitization is effectuated, ownership of the pool of Private Student Loans is transferred to a new special purpose securitization entity, which is typically a Delaware statutory trust established by the sponsor.

104.    This special purpose securitization trust issues investment notes to the noteholders investing in the private SLAB. These notes are typically collateralized by the principal and interest payments to be collected from the borrowers in the pool of loans.

105.    As part of the securitization process, an indenture trustee enters into various documents with other participants in the private SLAB. Among these documents is an indenture instrument, which grants to the indenture trustee for the benefit of noteholders ownership rights in the pool of loans and collection rights to the principal and interest payments from the borrowers. Commonly, the indenture trustee is a national banking association or national trust company designated by the securitization sponsor.

106.    The post-securitization servicer for the loans is typically either the pre-securitization servicer or an affiliate of the securitization sponsor. As the agent of the indenture

trustee, the servicer is the interface with the borrowers, sending loan statements to them and collecting the principal and interest payments from them. The servicer also maintains the accounting books and records for the loans.

107.    The private SLAB documents typically provide that when the servicer receives a payment on a loan, the servicer either (a) deposits the payment directly into an account held by, or for the benefit of, the indenture trustee or (b) deposits the payment into its own account and thereafter causes a payment transfer to the indenture trustee.

108.    The private SLAB documents also provide for the indenture trustee to distribute collections from the borrowers to pay (a) the private SLAB's administrative fees and expenses, such as fees of the servicer and the indenture trustee, and (b) the noteholders in accordance with their payment priorities.

109.    As alleged herein, the Defendants who have been indenture trustees have unlawfully collected on Discharged Loans. These Defendants are Wells Fargo Bank, N.A.; U.S. Bank, National Association; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; The Bank of New York Mellon, N.A.; The Bank of New York Mellon Trust Company, N.A.; UMB Bank, N.A.; Wilmington Trust, N.A.; and Wilmington Trust Company, N.A.

110.    As further alleged herein, the Defendants who have been servicers have also unlawfully collected on Discharged Loans. These Defendants are PHEAA, Nelnet-Servicer, Nelnet-Parent, Navient-Servicer, and Navient-Parent.

111.    Defendant PHEAA has been a servicer for Defendant U.S. Bank, which has been the indenture trustee for approximately fifteen private SLABs that originated between

approximately 2001-2008. Upon information and belief, either National Collegiate Funding or First Marblehead Corporation was the securitization sponsor of these private SLABs.

112.    Defendant Nelnet Servicing, LLC and, according to representations in its public filings, Nelnet-Parent have been servicers for Defendant U.S. Bank, which has been the indenture trustee for at least four private SLABs that originated during 2021. Upon information and belief, Defendant Nelnet-Parent was the securitization sponsor of these private SLABs.

113.    Defendant Navient-Servicer and, according to representations in its public filings, Nelnet-Parent have been servicers for several national banking association entities or national trust companies that were indenture trustees for at least 56 private SLABs. Upon information and belief, either Defendant Navient-Parent or its assignor Sallie Mae was the securitization sponsor of these private SLABs.

## V.    DEFENDANTS' WRONGFUL COLLECTIONS ON EACH PLAINTIFF'S DISCHARGED LOANS

### A.  Plaintiff LaBarron Tate

114.    On June 30, 2004, Mr. Tate filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Northern District of Georgia, Case No. 04-11990.

115.    On March 23, 2006, Mr. Tate converted his bankruptcy case to Chapter 7.

116.    On July 7, 2006, the bankruptcy court granted Mr. Tate a discharge of his debts pursuant to Section 727(b) of the Bankruptcy Code.

117.    As of July 7, 2006, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Mr. Tate's Private Student Loans and provides that the collection of any amount on Mr. Tate's Private Student Loans is void.

**Mr. Tate's Discharged PHEAA Loan**

118. To attend Full Sail University, on October 18, 2002, Mr. Tate borrowed $4,419.89 from an unknown Private Student Loan lender.

119. Upon information and belief, PHEAA was the original servicer of this loan.

120. On a subsequent unknown date, ownership of this loan was transferred to PHEAA, and PHEAA continued to act as the servicer on this loan.

121. PHEAA has wrongfully collected more than $5,200 from Mr. Tate on this loan after his bankruptcy discharge and in violation of his bankruptcy discharge.

122. A recent loan statement from PHEAA wrongfully shows that Mr. Tate remains personally liable for an outstanding loan balance of more than $3,800.

**Mr. Tate's Discharged Nelnet Loan**

123. To attend Full Sail University, on July 7, 2001, Mr. Tate borrowed $22,978 from Union Bank on a Private Student Loan.

124. On a subsequent unknown date, ownership of this loan was transferred to the Nelnet Defendants (or to one of the subsidiaries or affiliates of the Nelnet Defendants), and Nelnet-Servicer became the servicer on this loan.

125. The Nelnet Defendants have wrongfully collected more than $22,000 from Mr. Tate on this loan after his bankruptcy discharge and in violation of his bankruptcy discharge.

126. A recent loan statement from the Nelnet Defendants wrongfully shows that Mr. Tate remains personally liable for an outstanding balance of more than $14,700 on this loan.

**Mr. Tate's Discharged Sallie Mae-Navient Loan**

127. To attend Full Sail University, on July 3, 2002, Mr. Tate borrowed $12,000 from Sallie Mae.

128.    On an unknown date in 2014, Sallie Mae transferred ownership of this loan to the Navient Defendants and Navient-Servicer became the servicer on this loan.

129.    On a subsequent unknown date, the Navient Defendants transferred ownership of this loan to an unidentified indenture trustee for the benefit of noteholders of an unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trust and Navient-Servicer continued to act as the servicer on this loan.

130.    A recent loan statement from the Navient Defendants states that ownership of this loan is held by an unidentified "Navient Private Loan Trust" and that Navient-Servicer is the servicer of this loan.

131.    The Navient Defendants and the unidentified indenture trustee for the benefit of noteholders of the unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trust have wrongfully collected more than $11,500 from Mr. Tate on this loan after his bankruptcy discharge and in violation of his bankruptcy discharge rights.

132.    A recent loan statement from the Navient Defendants wrongfully shows that Mr. Tate remains personally liable for an outstanding balance of more than $24,000 on this loan.

### B.  Plaintiff Brandon Hood

133.    On June 16, 2011, Mr. Hood filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Massachusetts, Case No. 11-15781.

134.    On October 4, 2011, the bankruptcy court granted Mr. Hood a discharge of his debts pursuant to Section 727(b) of the Bankruptcy Code.

135.    As of October 4, 2011, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Mr. Hood's Private Student Loan and provides that the collection of any amount on Mr. Hood's Private Student Loan is void.

20

**Mr. Hood's Discharged Sallie Mae-Navient Loan**

136.    After attending Wentworth Institute of Technology, on January 25, 2007, Mr. Hood borrowed $91,039 from Sallie Mae to consolidate his previous Private Student Loans from Sallie Mae.

137.    On an unknown date in 2014, Sallie Mae transferred ownership of this loan to the Navient Defendants, and Navient-Servicer became the servicer on this loan.

138.    On a subsequent unknown date, the Navient Defendants transferred ownership of this loan to an unidentified indenture trustee for the benefit of noteholders of an unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trust and Navient-Servicer continued to act as the servicer on this loan.

139.    A recent loan statement from the Navient Defendants states that ownership of this loan is held by an unidentified "Navient Private Loan Trust" and Navient-Servicer is the servicer of this loan.

140.    The Navient Defendants and the unidentified indenture trustee for the benefit of noteholders of the unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trust have wrongfully collected more than $28,000 from Mr. Hood on this loan after his bankruptcy discharge and in violation of his bankruptcy discharge rights.

141.    A recent loan statement from the Navient Defendants wrongfully shows that Mr. Hood remains personally liable for an outstanding loan balance of more than $98,000.

**C.  Plaintiff Juliana Juarez DuFrane**

142.    On September 22, 2013, Ms. Juarez DuFrane filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Central District of California, Case No. 13-12374.

143.     On May 21, 2019, after Ms. Juarez DuFrane successfully completed her payments under her Chapter 13 plan, the bankruptcy court granted Ms. Juarez DuFrane a discharge of her debts pursuant to Section 1328(a) of the Bankruptcy Code.

144.     On May 21, 2019, Ms. Juarez DuFrane was relieved of, and discharged from, any personal liability to pay her Private Student Loans, pursuant to Section 1328(a) of the Bankruptcy Code.

145.     As of May 21, 2019, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Ms. Juarez DuFrane's Private Student Loans and provides that the collection of any amount on Ms. Juarez DuFrane's Private Student Loans is void.

### Ms. Juarez DuFrane's Discharged Sallie Mae-Navient Loans

146.     To attend Hofstra University, Ms. Juarez DuFrane borrowed the following amounts from Sallie Mae on the following dates: (a) $26,314 on September 30, 2008; (b) $6,605 on May 15, 2009; and (c) $19,765 on June 24, 2009.

147.     On an unknown date in 2014, Sallie Mae transferred ownership of these loans to the Navient Defendants, and Navient-Servicer became the servicer on these loans.

148.     On a subsequent unknown date, the Navient Defendants transferred ownership of these loans to an unidentified indenture trustee for the benefit of noteholders of an unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trust, and Navient-Servicer continued to act as the servicer on these loans.

149.     A recent loan statement from the Navient Defendants states that ownership of these loans is held by a "Navient Private Loan Trust" and Navient-Servicer is the servicer of these loans.

150.     The Navient Defendants and the unidentified indenture trustee for the benefit of noteholders of the unidentified, Navient-sponsored, Private Student Loan asset-backed

securitization trust have wrongfully collected more than $10,700 from Ms. Juarez DuFrane on these loans after her bankruptcy discharge and in violation of her bankruptcy discharge rights.

151.    A recent loan statement from the Navient Defendants wrongfully shows that Ms. Juarez DuFrane remains personally liable for outstanding loan balances of (a) more than $60,000 on the loan originated on September 30, 2008; (b) more than $13,600 on the loan originated on May 15, 2009; and (c) more than $25,000 on the loan originated on June 24, 2009.

### D.  Plaintiff Scott DuFrane

152.    On September 16, 2015, Mr. DuFrane filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Central District of California, Case No. 15-11839.

153.    On December 21, 2015, the bankruptcy court granted Mr. DuFrane a discharge of his debts pursuant to Section 727(b) of the Bankruptcy Code.

154.    As of December 21, 2015, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Mr. DuFrane's Private Student Loan and provides that the collection of any amount on Mr. DuFrane's Private Student Loan is void.

### Mr. DuFrane's Discharged Sallie Mae-Navient Loan

155.    To attend Thomas Jefferson School of Law, on June 19, 2009, Mr. DuFrane borrowed approximately $15,000 from Sallie Mae.

156.    On an unknown date in 2014, Sallie Mae transferred ownership of this loan to the Navient Defendants and Navient-Servicer became the servicer on this loan.

157.    On a subsequent unknown date, the Navient Defendants transferred ownership of this loan to an unidentified indenture trustee for the benefit of noteholders of an unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trust, and Navient-Servicer continued to act as the servicer on this loan.

158.    On a subsequent unknown date, the Navient Defendants caused this unidentified indenture trustee to transfer ownership of this loan to NCFC.

159.    A recent loan statement from the Navient Defendants states that NCFC is the owner of this loan and that Navient-Servicer is the servicer of this loan.

160.    The Navient Defendants have wrongfully collected more than $3,065.71 from Mr. DuFrane on this loan after his bankruptcy discharge and in violation of his bankruptcy discharge rights.

161.    A recent loan statement from the Navient Defendants wrongfully shows that Mr. DuFrane remains personally liable for an outstanding balance of more than $78,000 on this loan.

### E.  Plaintiff Ryan Lancaster

162.    On March 28, 2007, Mr. Lancaster filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Western District of Michigan, Case No. 07-02212.

163.    On November 29, 2007, the bankruptcy court granted Mr. Lancaster a discharge of his debts pursuant to Section 727(b) of the Bankruptcy Code.

164.    As of November 29, 2007, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Mr. Lancaster's Private Student Loans and provides that the collection of any amount on Mr. Lancaster's Private Student Loans is void.

### Mr. Lancaster's Discharged PHEAA-USB Loans

165.    To attend Capella University, Mr. Lancaster borrowed the following amounts from an unknown Private Student Loan lender or lenders on the following dates: (a) $2,867.09 on September 27, 2005; (b) $5,524.86 on September 29, 2005; and (c) $5,524.86 on March 2, 2005.

166.    Upon information and belief, PHEAA was the original servicer of these loans.

167.    On a subsequent unknown date, ownership of these loans was transferred to USB as the indenture trustee for the benefit of noteholders for one or more Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with National Collegiate Funding and First Marblehead Corporation. PHEAA continued to be the servicer on these loans.

168.    PHEAA and USB as the indenture trustee for the benefit of noteholders (for one or more Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with National Collegiate Funding and First Marblehead Corporation) have wrongfully collected more than $15,000 from Mr. Lancaster on these loans after his bankruptcy discharge and in violation of his bankruptcy discharge rights.

169.    A recent loan statement from PHEAA wrongfully shows that Mr. Lancaster remains personally liable for outstanding loan balances of (a) more than $1,350 on the loan originated on September 27, 2005; (b) more than $2,600 on the loan originated on September 29, 2005; and (c) more than $2,700 on the loan originated on March 2, 2005.

## Mr. Lancaster's Discharged Wells Fargo Loans

170.    To attend Capella University, Mr. Lancaster borrowed the following amounts from Wells Fargo on the following dates: (a) $5,000 on April 13, 2004; and (b) $10,000 on October 22, 2004.

171.    Wells Fargo has wrongfully collected more than $18,000 from Mr. Lancaster on these loans after his bankruptcy discharge and in violation of his bankruptcy discharge rights.

## F.  Plaintiff Tarryn Tyler

172.    On September 9, 2021, Ms. Tyler filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Colorado, Case No. 21-14651.

173.    On April 13, 2022, the bankruptcy court granted Ms. Tyler a discharge of her debts pursuant to Section 727(b) of the Bankruptcy Code.

174.    As of April 13, 2022, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Ms. Tyler's Private Student Loans and provides that the collection of any amount on Ms. Tyler's Private Student Loans is void.

### Ms. Tyler's Discharged PHEAA-USB Loans

175.    To attend the University of Massachusetts Amherst, Ms. Tyler borrowed the following amounts from Charter One Bank on the following dates: (a) $15,642.46 on September 27, 2005; (b) $14,290.50 on February 21, 2006; and (c) $14,659.69 on January 19, 2007.

176.    Upon information and belief, PHEAA was the original servicer of these loans.

177.    On a subsequent unknown date, ownership of these loans was transferred to USB as the indenture trustee for the benefit of noteholders, for one or more Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with National Collegiate Funding and First Marblehead Corporation. PHEAA continued to be the servicer on these loans.

178.    PHEAA and USB as the indenture trustee for the benefit of noteholders (for one or more Private Student Loan asset-backed securitization trusts sponsored by one or more entities associated with National Collegiate Funding and First Marblehead Corporation) have wrongfully collected at least $825 from funds belonging to Ms. Tyler on these loans after her bankruptcy discharge and in violation of her bankruptcy discharge rights.

179.    A recent loan statement from PHEAA wrongfully shows that Ms. Tyler remains personally liable for outstanding loan balances of (a) at least $14,000 on the loan originated on September 29, 2005; (b) at least $11,000 on the loan originated on February 21, 2006; and (c) at least $14,000 on the loan originated on January 19, 2007.

**Ms. Tyler's Discharged Discover Loan**

180.    To attend the University of Massachusetts Amherst, Ms. Tyler borrowed $10,000 from Citibank on July 2, 2012.

181.    On a subsequent unknown date (but, upon information and belief, in either 2013 or 2014), Citibank transferred ownership of this loan to Discover.

182.    Since that unknown date, Discover has been the owner and servicer of this loan.

183.    Discover has wrongfully collected at least $562.58 from Ms. Tyler on this loan after her bankruptcy discharge and in violation of her bankruptcy discharge rights.

184.    A recent loan statement from Discover wrongfully shows that Ms. Tyler remains personally liable for an outstanding loan balance of at least $7,400.

### G.  Plaintiff Matthew Maher

185.    On October 24, 2019, Mr. Maher filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Eastern District of New York, Case No. 19-46381.

186.    On January 29, 2020, the bankruptcy court granted Mr. Maher a discharge of his debts pursuant to Section 727(b) of the Bankruptcy Code.

187.    As of January 29, 2020, the Bankruptcy Code prohibits anyone from engaging in any act to collect on Mr. Maher's Private Student Loans and provides that the collection of any amount on Mr. Maher's Private Student Loans is void.

**Mr. Maher's Discharged Sallie Mae-Navient Loans**

188.    To attend The City of New York Brooklyn College, Mr. Maher borrowed the following amounts from Sallie Mae on the following dates: (a) $26,625 on August 4, 2006; and (b) $7,000 on September 5, 2006.

189.   To attend The New School, Mr. Maher borrowed the following amounts from Sallie Mae on the following dates: (a) $7,000 on January 19, 2007; (b) $15,452 on May 29, 2007; (c) $21,110 on August 27, 2007; (d) $8,000 on May 28, 2008; and (e) $20,000 on August 25, 2008.

190.   On an unknown date in 2014, Sallie Mae transferred ownership of these loans to the Navient Defendants and Navient-Servicer became the servicer on these loans.

191.   On a subsequent unknown date, the Navient Defendants transferred ownership of these loans to one or more unidentified indenture trustees for the benefit of noteholders of one or more unidentified, Navient-sponsored, Private Student Loan asset-backed securitization trusts, and Navient-Servicer continued to act as the servicer on these loans.

192.   On a subsequent unknown date, the Navient Defendants arranged to have ownership of the loans transferred to NCFC.

193.   A recent loan statement from the Navient Defendants states that NCFC is the owner of these loans and that Navient-Servicer is the servicer of these loans.

194.   Upon information and belief, NCFC and the other Navient Defendants have wrongfully collected funds from Mr. Maher on these loans after his bankruptcy discharge and in violation of his bankruptcy discharge rights, in an amount to be determined.

195.   A recent loan statement from the Navient Defendants wrongfully shows that Mr. Maher remains personally liable for outstanding loan balances of (a) at least $43,000 on the loan for Brooklyn College originated on August 4, 2006; (b) at least $11,000 on the loan for Brooklyn College originated on September 5, 2006; (c) at least $8,200 on the loan for New School originated on January 19, 2007; (d) at least $14,700 on the loan for New School originated on May 29, 2007; (e) at least $29,200 on the loan for New School originated on August 27, 2007; (f) at least $10,100

on the loan for New School originated on May 28, 2008; and (g) at least $25,000 on the loan for New School originated on August 25, 2008.

## VI.   DEFENDANTS' VIOLATIONS OF THE FEDERAL RIGHTS ACCORDED TO BANKRUPTCY-DISCHARGED PRIVATE STUDENT LOAN BORROWERS

196.   Since the modern United States Bankruptcy Code became effective on October 1, 1979, it has provided important and necessary relief for millions of debt-burdened individuals and has contributed to the health of our national economy.

197.   Bankruptcy provides debt-burdened individuals with a fresh start in life by discharging their debts.

198.   Pursuant to publicly available data,[1] it is estimated that 43.5 million student loan borrowers (for both Private Student Loans and government student loans) owe in excess of $1.757 trillion. This massive amount of student loan borrower debt is now the second-largest category of consumer debt in the United States, second only to consumer home mortgage debt, and greater than consumer debt for credit cards and auto loans.

199.   The publicly available data regarding default rates on student loans indicates that (a) approximately five million student loan borrowers, owing approximately $124.4 billion, are currently in default; (b) over a million student loans enter into default each year; (c) approximately 10.8% of student loan borrowers default on their student loans within their first year of repayment; and (d) approximately 25% of student loan borrowers default within their first five years of entering repayment.

---

[1] *See, e.g.*, Education Data Initiative, available at https://educationdata.org.

200.    The publicly available data indicates that the aggregate amount of Private Student Loan debt exceeds $131 billion, which is *only approximately 8% of the total student loan debt*.

201.    That 92% of student loans are nondischargeable in bankruptcy is one factor that has enabled Defendants to sustain the myth that *all* student loans, *including its Private Student Loans*, not dischargeable in bankruptcy absent a borrower's showing of undue hardship.

202.    Despite the urgent need that many Private Student Loan borrowers have for the fresh start relief that the Bankruptcy Code provides, the Defendants have wrongfully deprived that fresh start relief to hundreds of thousands of bankruptcy-discharged Private Student Loan borrowers.

203.    Defendants have illegally collected in excess of $1 billion on the Class Members' Discharged Loans after the Class Members obtained bankruptcy discharges.

204.    Defendants' illegal collections on the Class Members' Discharged Loans after their Private Student Loans were discharged in bankruptcy were wrongful and void.

205.    The funds that Defendants wrongfully collected on Discharged Loans are the property of the Class Members and, therefore, the Defendants must returned those collections to the Class Members.

## VII.   THE BANKRUPTCY CODE'S TREATMENT OF PRIVATE STUDENT LOANS

206.    Sections 727(b) and 1328(a) of the Bankruptcy Code broadly provide that a debtor's discharge in a bankruptcy case discharges the debtor's debts to creditors, including, for example, credit card debts, medical debts, debts for personal or business loans, and debts for tort liability such as negligence.

207.    Section 523(a) of the Bankruptcy Code identifies certain narrowly defined categories of debt that are not discharged in bankruptcy, including, for example, certain tax debts, debts incurred by fraud or willful and malicious conduct, and domestic support obligations.

208.    Section 523(a)(8) of the Bankruptcy Code addresses the dischargeability of student loans but, significantly, the dischargeability of **government** student loans is treated very differently from the dischargeability of **Private** Student Loans.

209.    The dischargeability of **government** student loan debt is addressed in subsection (A) of Section 523(a)(8), which was adopted as part of the Bankruptcy Reform Act of 1978 and which has been amended several times. Subsection (A) broadly provides that a student loan "made, insured, or guaranteed by a governmental unit" is not discharged in bankruptcy unless the debtor establishes that "excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." A **government** student loan, therefore, is presumptively excepted from the discharge in bankruptcy unless the debtor establishes "undue hardship."

210.    Until 2005, all categories of **Private** Student Loans were fully dischargeable in bankruptcy as nothing in the Bankruptcy Code provided otherwise.

211.    Effective April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005), added Subsection (B) to Section 523(a)(8) of the Bankruptcy Code. This new subsection created a narrowly defined category of Private Student Loan debt that would be eligible for an exception to the full dischargeability of **Private Student Loans**. But this new exception to the discharge for Private Student Loans only applies if a creditor files a timely legal action asserting a discharge-exception claim in court and subsequently obtains a court judgment finding that the creditor has proven by a

preponderance of the evidence each of the following substantive requirements of Section 523(a)(8)(B):

[i]     The Private Student Loan must be "a qualified education loan" as defined in Section 221(d)(1) of the Internal Revenue Code of 1986;

[ii]    The Private Student Loan borrower must have been an "eligible student" as defined in Section 25A(B)(3) of the Internal Revenue Code of 1986 and in 20 U.S.C. § 1091(a)(1);

[iii]   The Private Student Loan must have been for attendance at an "eligible educational institution" as defined in 26 U.S.C. § 25A(b)(3) and 20 U.S.C. § 1091(a)(1); and

[iv]    The amount of the Private Student Loan must not have exceeded the "cost of attendance" as defined in specific and extended detail in 20 U.S.C. § 1087ll, and as published and certified by the Private Student Loan borrower's educational institution.

212.    The narrowly defined scope of this discharge exception for a narrowly defined category of **Private** Student Loans means that all other categories of Private Student Loans are never eligible for a discharge exception under any circumstances. A few examples of the categories of **Private** Student Loans that are never eligible for a discharge exception under any circumstances are:

[i]     Private Student Loans where the loan amount is higher than the cost of attendance;

[ii]    Private Student Loans where the educational institution is not eligible for funding under Title IV of the Higher Education Act of 1965, such as unaccredited schools, an unaccredited trade program at a school, or a school in a foreign country;

[iii]   Private Student Loans made to cover living expenses, fees, or moving costs incurred while a Private Student Loan borrower studies for the bar examination or other professional examinations;

[iv]   Private Student Loans made to cover living expenses, fees, or moving costs incurred while in a medical or dental residency program, or other similar types of post-graduate programs; and

[v]   Private Student Loans made to cover tuition at a Title-IV school that the Private Student Loan borrower attends less than half-time.

213.   In addition, even where a Private Student Loan creditor might be eligible to seek a discharge exception for its Private Student Loan under Section 523(a)(8)(B), the Private Student Loan creditor must complete a three-step process that bankruptcy law requires before it may legally commence any post-discharge collection on a Discharged Loan.

214.   In the **first** step of the discharge-exception process required by bankruptcy law, the Private Student Loan creditor must timely file a legal proceeding against the Private Student Loan borrower in an appropriate court, during which the Private Student Loan creditor must prove all statutorily-required facts necessary to support the Private Student Loan creditor's assertion that its Private Student Loan should be excepted from the discharge under Subsection (B) of Section 523(a)(8). As reviewed below, this legal proceeding must be commenced within four years of the borrower's bankruptcy filing under 28 U.S.C. § 1658(a).

215.   This legal requirement recognizes the importance of the due process rights accorded to a bankruptcy-discharged Private Student Loan borrower to contest a Private Student Loan creditor's discharge-exception assertions in an adversary process in court before any collection activity on the loan.

216.     This legal requirement also respects the foundational premise of the United States legal system that only a court in an adversary process, not a litigant exercising self-help, has the legal authority to determine whether a bankruptcy-discharged Private Student Loan is excepted from the bankruptcy discharge.

217.     It is therefore unlawful for one party (here, a Private Student Loan creditor or its agents) to act as if its position that its Private Student Loan is not discharged prevails without first following and satisfying the required legal process in court.

218.     A Private Student Loan creditor's unilateral or self-help actions in collecting on a bankruptcy-discharged Private Student Loan, without first timely filing a discharge-exception legal proceeding against the Private Student Loan borrower in court, disrespects the crucial importance of the bankruptcy discharge under bankruptcy law to the detriment of not only the borrower but also our national economy.

219.     In the **second** step of the three-step discharge-exception process required by bankruptcy law, the Private Student Loan creditor has the burden of proof in court to establish by a preponderance of the evidence all four of the substantive statutory requirements set forth in Subsection (B) of Section 523(a)(8) of the Bankruptcy Code, as summarized above.

220.     There is no requirement that the Private Student Loan borrower bring an action to establish that the Private Student Loan creditor cannot prove one or more of the four substantive statutory requirements set forth in subsection (B) of Section 523(a)(8). The creditor has the burden to timely file the non-dischargeability action and to prove its non-dischargeability assertions to the satisfaction of the court.

221.     In the **third** step of the three-step discharge-exception process that bankruptcy law requires, the Private Student Loan creditor must obtain an order or judgment from the court

determining that its Private Student Loan claim is excepted from the bankruptcy discharge under Section 523(a)(8)(B) of the Bankruptcy Code.

222.    Only when a Private Student Loan creditor has successfully completed all of these three mandatory discharge-exception steps may the creditor then legally seek to collect on a Private Student Loan after the borrower's bankruptcy discharge.

223.    If a Private Student Loan creditor fails to successfully complete any one of these three mandatory discharge-exception steps, then the bankruptcy discharged Private Student Loan remains fully discharged under Sections 727(b) or 1328(a) of the Bankruptcy Code.

224.    The United States Consumer  Financial Protection Bureau ("CFPB") has recently stated: "It is vital that Private Student Loan borrowers also receive the relief the Bankruptcy Code provides — and that loan owners, lenders, servicers, and debt collectors honor that relief when a bankruptcy judge discharges a consumer's debts."[2]

## VIII. THE MYTH THAT STUDENT LOANS ARE NOT DISCHARGEABLE IN BANKRUPTCY

225.    In 2014, the United States CFPB stated: "CFPB examiners found one or more supervised entities that were misrepresenting to consumers that student loans are never dischargeable in bankruptcy."[3]

226.    In 2022, the United States CFPB stated: "For too long, a myth has persisted that student loans are not dischargeable in bankruptcy."[4]

---

[2] Robert G. Cameron, *Busting myths about bankruptcy and private student loans* (April 12, 2022), available at www.consumerfinance.gov/about-us/blog/busting-myths-about-bankruptcy-and-private-student-loans/.

[3] https://files.consumerfinance.gov/f/201410_cfpb_supervisory-highlights_fall-2014.pdf, p. 17.

[4] https://www.consumerfinance.gov/about-us/blog/busting-myths-about-bankruptcy-and-private-student-loans/

35

227.    In its Bulletin 2023-01: Unfair Billing and Collection Practices After Bankruptcy Discharges of Certain Student Loan Debts, the CFPB stated: "The CFPB's supervisory observations and consumer complaints show that servicers continued to make collection attempts on student loans that were discharged through bankruptcy in many instances."[5]

228.    National Public Radio has reported, "Over the years, a myth has taken hold that you can't get student debt reduced or wiped out through bankruptcy."[6]

229.    U.S. News and World Report has observed: "You may have heard somewhere that student loans can't be discharged in bankruptcy, but that's a myth."[7]

230.    The New York State Bar Association has stated: "The student loan industry has worked hard to convince everyone, even lawyers, that student loans are nearly impossible to discharge in bankruptcy. The problem is that this belief is rooted in neither facts nor precedent, and is barely more than legal smoke and mirrors created to keep debtors from even making the claim."[8]

231.    The Defendants actively rely upon and promote this myth, such as by their continued and brazen post-discharge collections on Class Members' Discharged Loans in violation of the Bankruptcy Code.

---

[5] https://files.consumerfinance.gov/f/documents/cfpb_unfair-billing-collection-bankruptcy-student-loan-debt_2023-01.pdf, p. 6.

[6] Chris Arnold, Myth Busted: Turns Out Bankruptcy Can Wipe Out Student Loan Debt After All (January 22, 2020), available at www.npr.org/2020/01/22/797330613/myth-busted-turns-out-bankruptcy-can-wipe-out-student-loan-debt-after-all.

[7] https://www.usnews.com/education/blogs/student-loan-ranger/articles/student-loans-and-bankruptcy-what-to-know (August 25, 2021)

[8] Student Loans & Bankruptcy: Myths Debunked, available at: https://nysba.org/products/student-loans-bankruptcy-myths-debunked/.

232.    In a series of Annual Form 10-K's that the Navient Defendants have publicly filed with the United States Securities and Exchange Commission ("SEC"), the Navient Defendants have consistently, explicitly and falsely promoted this myth, stating in each such SEC filing that: "Private Education Loans are generally non-dischargeable in bankruptcy."

233.    The Navient Defendants have further promoted this myth with similar language in their investor presentations. For example, the Navient Parent's "2023 1st Quarter Investor Presentation" dated April 27, 2023, and filed with the SEC as an exhibit to a Form 8K, incorrectly states that its Private Student Loans are "[t]ypically non-dischargeable in bankruptcy except under certain circumstances, including a showing of undue hardship."

234.    Similarly, an Official Statement that PHEAA recently issued for a tax-exempt bond offering falsely states: "Under the U.S. Bankruptcy Code (as amended, the 'Bankruptcy Code'), educational loans such as the Financed Eligible Loans are generally non-dischargeable." In this context, "Financed Eligible Loans" means Private Student Loans.

235.    This Official Statement by PHEAA then misleadingly states: "However, the Bankruptcy Code provides that educational loans may become dischargeable if the borrower proves that keeping their non-dischargeable status would impose an undue hardship on the debtor and the debtor's dependents." This statement is misleading because it wrongfully conflates private student debt and government student debt, and ignores PHEAA's legal obligations of proving that its loan is nondischargeable under Section 523(a)(8)(B) of the Bankruptcy Code and thereby falsely suggests that the *only* way for a borrower to include a PHEAA loan in the bankruptcy discharge is to prove undue hardship.

236.    Upon information and belief, other Defendants, like the PHEAA and Navient Defendants, have also consistently and explicitly promoted this myth in their investor presentations, in their internal documents, or elsewhere.

237.    This false myth is ubiquitous. It has wrongfully cost Class Members billions of dollars and wrongfully enriched the Defendants by billions of dollars.

## IX.   THE FOUR-YEAR STATUTE OF LIMITATIONS OF 28 U.S.C. § 1658(a) APPLIES TO PRIVATE STUDENT LOAN DISCHARGE-EXCEPTION CLAIMS UNDER SECTION 523(a)(8)(B)

238.    28 U.S.C. § 1658(a) is the generally applicable statute of limitations on federal statutory claims. It provides, "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."

239.    28 U.S.C. § 1658(a) was enacted on December 1, 1990. P.L. 101-650.

240.    Subsection (B) of Section 523(a)(8) was enacted 15 years later, in 2005.

241.    Therefore, the 4-year statute of limitations under 28 U.S.C. § 1658(a) applies to a creditor's claim that a Private Student Loan is nondischargeable under Subsection (B) of Section 523(a)(8) of the Bankruptcy Code.

242.    Any creditor's claim that the debt it holds is nondischargeable under any subsection of Section 523(a) of the Bankruptcy Code accrues when the debtor files his or her bankruptcy case, because that is the first date on which the creditor is legally permitted to file such a claim.

243.    Therefore, under 28 U.S.C. § 1658(a), a Private Student Loan creditor must file a discharge-exception legal proceeding against a Private Student Loan borrower asserting that its Private Student Loan is eligible for a discharge exception under Section 523(a)(8)(B) of the

Bankruptcy Code within four years after the Private Student Loan borrower filed his or her bankruptcy case.

244.    If a Private Student Loan creditor or its agent (typically its servicer) does not file a legal proceeding against a Private Student Loan borrower seeking a judgment that the Private Student Loan is not dischargeable within four years of the Private Student Loan borrower's bankruptcy filing, then, under 28 U.S.C. § 1658(a), a Private Student Loan creditor is permanently barred from asserting its discharge-exception claim under Section 523(a)(8)(B).

245.    28 U.S.C. § 1658(a) was enacted on December 1, 1990. P.L. 101-650. Because Subsection (B) of Section 523(a)(8)(B) was enacted in 2005, and because prior to 2005, there was no discharge exception for any Private Student Loans under the Bankruptcy Code, any discharge-exception claim under Section 523(a)(8)(B) must be filed in court by a Private Student Loan creditor within four-years after such discharge-exception claim accrues.

246.    Defendants' wrongful collections on Class Members' Discharged Loans have trampled upon the fresh start that the Class Members were statutorily granted by a bankruptcy discharge in their bankruptcy cases. To be fully effective, that statutorily afforded fresh start must include protecting the Class Members from the significant likelihood that Defendants, absent judicial intervention in this case, will continue their wrongful post-discharge conduct by subsequently filing time-barred, discharge-exception lawsuits against Class Members that violate the four-year statute of limitations under 28 U.S.C. § 1658(a).

247.    The Plaintiffs and Class Members, therefore, seek a judgment declaring that 28 U.S.C. § 1658(a) bars and prohibits Private Student Loan creditors from filing or pursuing any discharge-exception claim under Section 523(a)(8) of the Bankruptcy Code when more than four-years has elapsed since the Private Student Loan borrower filed his or her bankruptcy case. The

Plaintiffs and Class Members also seek an injunction, based upon such declaratory judgment, barring and prohibiting Defendants from violating this four-year statute of limitations under 28 U.S.C. § 1658(a), as applied to any discharge-exception claim that Defendants may have under Section 523(a)(8) of the Bankruptcy Code.[9]

## X.    CLASS ACTION ALLEGATIONS

248.    Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All persons who obtained a discharge from a United States Bankruptcy Court under Section 727(b) or 1328(a) of the Bankruptcy Code and from whom, after the discharge, any of the Defendants have collected, attempted to collect, or may in the future attempt to collect on a Discharged Loan.

249.    A Discharged Loan is defined as:

> A Private Student Loan that: (i) was made to any person who subsequently obtained a bankruptcy discharge under either Section 727(b) or Section 1328(a) of the Bankruptcy Code, and (ii) is not the subject of either (x) a duly entered judgment that excepted the debt from the bankruptcy discharge under Section 523(a) of the Bankruptcy Code, or (y) an enforceable reaffirmation agreement under Section 524(c) of the Bankruptcy Code.

250.    A "Private Student Loan" is defined as:

---

[9] Section 523(a)(8)(A)(i) of the Bankruptcy Code authorizes a student loan creditor to seek a discharge exception for a student loan "made under any program funded in whole or in part by a governmental unit or nonprofit institution." Prior to 1998, this discharge exception only applied during a temporarily-limited period for the first 7 years of loan repayment and, thus, this temporarily-limited discharge exception ceased to exist thereafter. In 1998, however, Congress amended this discharge-exception to make it a permanent exception that continues to apply even after the first 7 years for loan repayment. 28 U.S.C. § 1658(a) was enacted on December 1, 1990. P.L. 101-650. Because this permanent discharge exception in Section 523(a)(8)(A)(i) did not exist in 1990, and was created in 1998 after the December 1990 effective date for the 4 year federal statute of limitations in 28 U.S.C. 1658(a), any permanent discharge-exception claim under Section 523(a)(8)(A)(i) must also be filed in court by a student loan creditor within four-years after such discharge-exception claim accrues, as of the date of commencement of the bankruptcy case. See 28 U.S.C. 1658(a).

An education-related loan that is neither (i) made, insured, or guaranteed by a governmental unit, nor (ii) made under any program funded in whole or in part by a governmental unit or nonprofit institution.

251.    Each of the Plaintiffs in this class action obtained a bankruptcy discharge of one or more Private Student Loans that had been owed to or collected on by one or more of the Defendants.

252.    The Class satisfies the prerequisites and requirements of Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

253.    **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the Class or identity of the Class Members, since such information is in the exclusive control of the Defendants. Nevertheless, the Class encompasses hundreds of thousands of individuals dispersed throughout the United States. The number of Class Members is so numerous that joinder of all Class Members is impracticable. The names, addresses, and phone numbers of Class Members are identifiable through records maintained by the Defendants.

254.    **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

i.      Whether Defendants engaged in the conduct alleged herein;

ii.     Whether the Bankruptcy Code prohibits a Private Student Loan creditor from collecting on its claim against a borrower who has obtained a discharge in bankruptcy under either Section 727(b) or 1328(a) of the Bankruptcy Code (11 U.S.C. §§ 727(b), 1328(a)) without first obtaining a duly entered judgment under Section 523(a)(8)(B) of the Bankruptcy Code (11 U.S.C. § 523(a)(8)(B)), or otherwise, excepting the loan debt from the discharge;

iii,   Whether 28 U.S.C. § 1658(a) bars a Private Student Loan creditor from seeking a non-dischargeability judgment after the expiration of four years after the accrual of such non-dischargeability claim;

iv.   Whether the Defendants' collections on Discharged Loans are unlawful and void;

v.   Whether the Class Members are entitled to a declaratory judgment that the Defendants' collections on Discharged Loans are unlawful and void;

vi.   Whether Class Members are entitled to a judgment awarding them equitable relief, based upon restitution and disgorgement, requiring the Defendants to return to the Class Members of the full amount that Defendants collected on the Discharged Loans, plus applicable pre-judgment interest, pursuant to 28 U.S.C. § 2202;

vii.   Whether Class Members are entitled to a judgment awarding them equitable relief, based upon restitution and disgorgement, requiring the Defendants to return to the Class Members the full amount that Defendants collected on the Discharged Loans, plus applicable pre-judgment interest thereon, pursuant to Section 105(a);

viii.   Whether Class Members are entitled to declaratory judgment declaring that a Private Student Loan creditor is prohibited from collecting on its claim against a borrower who has obtained a discharge in bankruptcy under either Section 727(b) or Section 1328(a) without first obtaining a duly entered judgment from a court excepting the loan debt from the discharge;

ix.   Whether Class Members are entitled to a declaratory judgment declaring that 28 U.S.C. § 1658(a) declaring that 28 U.S.C. § 1658 bars Defendants from filing a lawsuit against a Class Member asserting a claim of nondischargeability more than four years after that Class Member's bankruptcy filing;

x.     Whether Class Members are entitled to a permanent injunction prohibiting the Defendants from taking any acts to collect on the Discharged Loans;

xi.    Whether Class Members are entitled to a permanent injunction prohibiting the Defendants from filing lawsuits against Class Members asserting claims of nondischargeability more than four years after the accrual of such non-dischargeability claim.

255.   **Typicality:** The Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' substantially uniform misconduct as described above. The Plaintiffs representing the Class are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class Members arise from the same operative facts and are based on the same legal theories.

256.   **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation and in bankruptcy law; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

257.   **Declaratory and Injunctive Relief:** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate, pursuant to Fed. R. Civ. P. 23(b)(2), preliminary and final injunctive relief and declaratory relief with respect to the Class as a whole. Specifically, the Defendants have unlawfully collected on Discharged Loans in violation of Sections 727(b) and 1328(a) of the Bankruptcy Code based on the myth that like government student loans, Private Student Loans are nondischargeable

in bankruptcy and that a judgment of nondischargeability from a court is not legally required to collect on Discharged Loans.

258.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not; individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## XI.   CLAIMS FOR RELIEF

### COUNT ONE

**Declaratory Relief Regarding
the Defendants' Wrongful Collections
Against the Class Members**

259.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

260.    Plaintiffs assert this claim for declaratory relief against the Defendants on behalf of themselves and the Class.

261.    Upon the bankruptcy discharges that each of the Class Members received, they were no longer under any legal obligation to repay their Private Student Loans to the Defendants.

262.    Even though the Class Members were no longer under any legal obligation to repay Discharged Loans to the Defendants, the Defendants continued to collect on those loans.

263.    Those collections were unlawful and void.

264.    The funds collected by the Defendants remain Class Members' property.

265.    Because the Defendants' collection on Class Members' Discharged Loans is unlawful under the Bankruptcy Code and the funds collected are Class Members' property, the Plaintiffs need not make any further showing to establish grounds for this declaratory relief, such as, for example, irreparable harm or the Defendants' willfulness or bad faith.

266.    The Declaratory Judgment Act (28 U.S.C. § 2201(a)) states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]"

267.    As the Declaratory Judgment Act authorizes, the Plaintiffs seek a judgment declaring that:

>   (a)  The Class Members' Discharged Loans were discharged in their bankruptcy cases pursuant to Bankruptcy Code Section 727(b) (applicable to a discharge granted under Chapter 7 of the Bankruptcy Code) or Bankruptcy Code Section 1328(a) (applicable to a discharge granted under Chapter 13 of the Bankruptcy Code);

>   (b)  Defendants' collections on the Class Members' Discharged Loans were wrongful, void, and without any binding legal effect;

>   (c)  The funds that Defendants collected on the Discharged Loans are the property of the Class Members; and,

(d) Therefore, Defendants must return the funds that they collected on Discharged Loans.

## COUNT TWO

### Injunctive Relief to Enforce and
### Carry Out the Bankruptcy Discharge

268.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

269.    Plaintiffs assert this claim for injunctive relief against the Defendants on behalf of themselves and the Class.

270.    Under the Bankruptcy Code, the Defendants' collections on Discharged Loans were unlawful and void.

271.    The Plaintiffs seek injunctive relief because the Defendants' decades-long pattern and practice of wrongfully collecting on Class Members' Discharged Loans makes this relief "necessary or appropriate" under Section 105(a) of the Bankruptcy Code.

272.    The Plaintiffs also seek injunctive relief because the Defendants' decades-long pattern and practice of wrongfully collecting on Class Members' Discharged Loans makes this relief "necessary or proper relief" under the Declaratory Judgment Act.

273.    Because the Defendants' collection on Class Members' Discharged Loans is unlawful under the Bankruptcy Code and the funds collected post-discharge are Class Members' property, the Plaintiffs need not make any further showing to establish grounds for this injunctive relief, such as, for example, irreparable harm or the Defendants' willfulness or bad faith. In addition, the Plaintiffs need not show that the balance of equities and hardships is in the Class Members' favor or that the requested injunction is in the public interest.

274. The Defendants' unlawful decades-long collections on Class Members' Discharged Loans is sufficient by itself to justify the assistance of this Court in enforcing the bankruptcy discharges granted to Class Members in their bankruptcy cases.

275. As the Bankruptcy Code and Declaratory Judgment Act authorize, the Plaintiffs seek an order directing the Defendants, for each Class Member:

(a) To refrain from, and to cease in perpetuity, all acts to collect or attempt to collect on Discharged Loans;

(b) To adjust their books and records to reflect that the Class Member's Discharged Loans have been discharged in bankruptcy and that the Class Member has no personal liability for any amount on account of his or her Discharged Loans;

(c) To update and correct their reporting to all credit reporting agencies to cause such credit reporting agencies to adjust their books and records to reflect that the Class Member's Discharged Loans have been discharged and that the Class Member has no personal liability for any amount under their Discharged Loans;

(d) To provide written notice and confirmation (i) that the Class Member has no personal liability for any amount on account of his or her Discharged Loans; (ii) that no further collections or attempts to collect on the Class Member's discharged student loan will be undertaken; (iii) that Defendants' books and records have been adjusted to reflect that the Class Member's Discharged Loans have been discharged in bankruptcy; and (iv) that this adjustment has been reported to all credit reporting agencies.

## COUNT THREE
### Equitable Relief - Restitution and Disgorgement to Return the
### Wrongfully Collected Funds to Class Members

276.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

277.    Plaintiffs assert this claim for equitable relief, based upon restitution and disgorgement, against the Defendants on behalf of themselves and the Class Members.

278.    The Defendants' collections on Discharged Loans were unlawful and void. Further, the funds that the Defendants collected on those Discharged Loans remain the property of the Plaintiffs and the Class Members.

279.    Because the Defendants' collections on Discharged Loans is unlawful under the Bankruptcy Code and the funds collected are Class Members' property, the Plaintiffs need not make any further showing to establish grounds for equitable relief, based upon restitution and disgorgement, such as, for example, irreparable harm or the Defendants' willfulness or bad faith.

280.    Under Section 105(a) of the Bankruptcy Code, the Plaintiffs and the Class Members seek an order requiring the Defendants to return to the Class Members the full amount wrongfully collected on their Discharged Loans, plus applicable pre-judgment interest thereon, because such an order "is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, specifically Sections 727(b) and 1328(a) of the Bankruptcy Code.

281.    Under Section 2202 of the Declaratory Judgment Act (28 U.S.C. § 2202), the Plaintiffs and the Class Members, based upon the declaratory judgment relief to be awarded herein under 28 U.S.C. 2201, seek "[f]urther necessary or proper relief" in the form of equitable relief, based upon restitution and disgorgement, requiring the Defendants to return to the Class Members of the full amount wrongfully collected on their Discharged Loans, plus applicable pre-judgment interest.

## COUNT FOUR

### Declaratory and Injunctive Relief Regarding
### the Applicable Statute of Limitations

282.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

283.     Plaintiffs assert this claim for declaratory and injunctive relief against the Defendants on behalf of themselves and the Class.

284.     Under 28 U.S.C. § 1658(a), a Private Student Loan creditor must file a lawsuit against the borrower on a claim that the loan is nondischargeable under Section 523(a)(8) of the Bankruptcy Code within four years of the borrower's bankruptcy filing.

285.     The Defendants' decades-long pattern and practice of wrongfully collecting on Class Members' Discharged Loans strongly justifies the Plaintiffs and the Class to seek the assistance of this Court to require the Defendants to comply with this federal statute of limitations applicable to  any claim of non-dischargeability under Section 523(a)(8) of the Bankruptcy Code.

286.     Under both the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201-2202) and Section 105(a) of the Bankruptcy Code , the Plaintiffs seek: (a) a declaratory judgment declaring that, upon the expiration of four years after a Class Member's bankruptcy filing, 28 U.S.C. § 1658(a) bars any claim of student loan nondischargeability that any Defendant may have  against any  Class Member on a Private Student Loan, and (b) an order enjoining the Defendants from filing any claim of student loan nondischargeability against a Class Member more than four years after that Class Member's bankruptcy filing.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that this Court:

A.     Determine that the claims alleged in the Complaint may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the National Class as defined above;

B.     Appoint Plaintiffs as representatives of the Class and their counsel as Class Counsel;

C.     Enter a judgment granting the relief that the Plaintiffs seek on behalf of themselves and the Class Members in Counts One through Four;

D.     Award pre- and post-judgment interest on any monetary relief;

E.     Determine that the Defendants are financially responsible for all Class notices and the administration of Class relief; and

F.     Grant such additional relief that this Court deems just and equitable, including an award of reasonable attorney fees and costs as appropriate.


## JURY DEMAND

Plaintiffs request a jury trial on any claim, affirmative defense, or issue in the case that the Court determines is triable by a jury.


Dated: July _____, 2023

*/s/ Michael B. Wolk*
Michael B. Wolk, Esq.
**Law Offices of Michael B. Wolk, P.C.**
155 East 55th Street, Suite 300B
New York, New York 10022
Telephone: (917) 238-0576
michael.wolk@wolkgroup.com

E. Powell Miller
(*pro hac vice* application forthcoming)
Peter A. Muhic
(*pro hac vice* application forthcoming)

Dennis A. Lienhardt
(*pro hac vice* application forthcoming)
**The Miller Law Firm, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
pm@millerlawpc.com
dal@millerlawpc.com

Steven Rhodes
(*pro hac vice* application forthcoming)
**Steven Rhodes Consulting, LLC**
1610 Arborview Blvd
Ann Arbor, MI 48103
Telephone: (734) 646-7406
rhodessw@comcast.net

Brian A. Sullivan
(*pro hac vice* application forthcoming)
**Werb & Sullivan**
Legal Arts Building
1225 N. King Street
Suite 600
Wilmington, DE 19801
Telephone: (302) 652-1100
bsullivan@werbsullivan.com

*Counsel for Plaintiffs and the Putative Class*